1 | HARVEY SISKIND JACOBS LLP
LAWRENCE J. SISKIND  (State Bar No. 85628)
2 | IAN K. BOYD (State Bar No. 191434)
Three Embarcadero Center, Suite 1060
3 | San Francisco, California  94111
Telephone:  415.391.7112
4 | Facsimile:  415.391.7124

5 | Attorneys for Plaintiffs
Razor & Tie Direct, LLC and
6 | Razor & Tie Entertainment, LLC

7

8 | IN THE UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

11

12 | RAZOR & TIE ENTERTAINMENT, LLC, a     No.:   C 01-3061 MHP
New York limited liability company; RAZOR
13 | & TIE DIRECT, LLC, a New York limited     **COMPLAINT FOR CONTRIBUTORY**
liability company,                                              **AND VICARIOUS COPYRIGHT**
14 |                                      Plaintiffs,          **INFRINGEMENT, UNLAWFUL USE OF**
                                                                    **DIGITAL AUDIO INTERFACE DEVICE,**
15 |      vs.                                                   **AND UNFAIR COMPETITION**

16 | NAPSTER, INC., a Delaware corporation, and   **Jury Trial Demanded**
DOES 1 through 100,
17
                                     Defendants.
18

19 | **Nature of Case**

20 |         1.      This is an action for contributory and vicarious copyright infringement and related

21 | state law claims arising out of the willful conduct of defendant Napster, Inc. ("Napster").  Napster is a

22 | commercial enterprise that has enabled and encouraged Internet users to connect to Napster's

23 | computer servers in order to make copies of plaintiffs' copyrighted sound recordings available to

24 | other Napster users for unlawful copying and distribution.  As Napster is well aware, virtually all of

25 | the reproductions and distributions it enables and encourages are infringing and in violation of federal

26 | copyright and state laws.

27 |         2.      Plaintiffs are informed and believe, and on that basis aver, that in exchange for

28 | providing these facilities and services – free of charge to Napster users – Napster seeks to cultivate an

1   extensive user base that will attract advertising and investment dollars. Thus, Napster is building a

2   business on, and seeks to profit from, the daily, massive infringement it enables and encourages.

3   Napster's conduct has caused and continues to cause plaintiffs grave and irreparable harm.

4   **Jurisdiction and Venue**

5   3.      This action seeks damages and injunctive relief for copyright infringement under the

6   Copyright Law of the United States (17 U.S.C. §§ 101 *et seq.*).

7   4.      This Court has jurisdiction of this action under 17 U.S.C. §§ 101 *et seq.* and 28 U.S.C.

8   §§ 1338(a) and (b). This Court also has jurisdiction under 28 U.S.C. § 1332, because the parties are

9   diverse and the amount in controversy exceeds $75,000.

10  5.      This Court has supplemental jurisdiction over the related Counts IV and V in that

11  these claims are so related to the above federal claims that they form part of the same case or

12  controversy.

13  6.      This Court has personal jurisdiction over defendants in that defendants reside in and/or

14  are doing business in the State of California and in this District. In addition, many of the acts of

15  infringement and unfair competition complained of herein occurred in the State of California and in

16  this District.

17  7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

18  **Intradistrict Assignment**

19  8.      Assignment to the San Francisco Division is appropriate because a substantial part of

20  the events or omissions giving rise to this action occurred in San Mateo County.

21  **The Parties**

22  9.      Plaintiff Razor & Tie Entertainment, L.L.C., is a limited liability company duly

23  organized and existing under the laws of the State of New York, with its principal place of business

24  in New York, and is duly qualified to transact business in the State of California.

25  10.     Plaintiff Razor & Tie Direct, L.L.C., is a limited liability company duly organized and

26  existing under the laws of the State of New York, with its principal place of business in New York,

27  and is duly qualified to transact business in the State of California.

28

1        11.    Plaintiffs are informed and believe and on that basis aver that defendant Napster is a

2   corporation licensed under the laws of Delaware, with its principal place of business in Redwood

3   City, California.

4        12.    The true names and capacities, whether individual, corporate, associate, or otherwise,

5   of all defendants sued herein as Does 1 through 100, are unknown to plaintiffs, who therefore sue

6   said defendants by such fictitious names.  Plaintiffs will seek leave of Court to amend this Complaint

7   to state their true names and capacities when the same have been ascertained.  Plaintiffs are informed

8   and believe and on that basis aver that said defendants are liable to plaintiffs as a result of their

9   participation in all or some of the acts hereinafter set forth.

10                                **Plaintiffs' Business**

11        13.    Plaintiffs are in the business of producing sound recordings, and manufacturing,

12   distributing, selling, and/or licensing the distribution and sale of their sound recordings in

13   phonorecords (as that term is defined in 17 U.S.C. § 101, and including, without limitation, compact

14   discs) or arranging to do so in the United States.  The names and reputations of plaintiffs as

15   manufacturers of phonorecords of high artistic and technical quality are widely and favorably known

16   in the State of California and throughout the United States.

17        14.    Plaintiffs have invested and continue to invest substantial sums of money, as well as

18   time, effort, and creative talent, to discover and develop recording artists, and to create, manufacture,

19   advertise, promote, sell, and license phonorecords embodying the performances of their exclusive

20   recording artists.  In order to create such phonorecords, plaintiffs make payments to these recording

21   artists, other musicians, various trust funds established for such musicians' benefit, producers,

22   technicians, and other staff personnel, as well as various other payments.  Plaintiffs and their

23   recording artists are compensated for their creative efforts and monetary investments largely from the

24   sale of phonorecords to the public and from license fees from the reproduction, distribution, digital

25   performance, or other exploitation of such phonorecords. Absent such compensation, profits and

26   motivation are siphoned away from artists and the record companies that record, manufacture,

27   promote, and distribute these works.  The pool of resources available for finding and promoting new

28   artists shrinks, and sound quality and recording integrity are diluted and corrupted.  The ultimate

1  result is that the public's access to a wide variety of high-quality musical recordings is sharply

2  curtailed.

3        15.    Plaintiffs are the copyright owners or owners of exclusive rights under copyright with

4  respect to certain copyrighted sound recordings embodied in their phonorecords (the "Copyrighted

5  Recordings").  Plaintiffs have applied for and/or received Certificates of Copyright Registration from

6  the Register of Copyrights for its Copyrighted Recordings.  True and correct copies of representative

7  copyright registrations of plaintiff are attached hereto as Exhibit A.

8        16.    Pursuant to 17 U.S.C. Section 106, plaintiffs, as the owners of the respective

9  copyrights, have the exclusive right, among other things, to "reproduce the [Copyrighted Recordings]

10  in copies or phonorecords" and to "distribute copies [of the Copyrighted Recordings] in phonorecords

11  . . . to the public."

12        17.    In addition to the Copyrighted Recordings, plaintiffs license phonorecords from others

13  in order to creatively compile and distribute musically-themed compilations of sound recordings (the

14  "Licensed Recordings").  Such compilations may focus on heavy metal ballads from the 1980's,

15  dance hits from the 1990's, or Southern rock hits from the 1970's.  By virtue of plaintiffs' selection

16  and compilation of these pre-existing recordings, after culling through tens of thousands of potential

17  selections, Plaintiffs exercise substantial skill and creativity.  Plaintiffs' ability to successfully

18  compile such musical selections from the Licensed Recordings is well known throughout California

19  and the United States.  For example, plaintiffs' Monster Ballads compilation has sold approximately

20  two million copies.

21  **<u>Online Music Piracy</u>**

22        18.    Music can be digitized and distributed instantly over the Internet.  Unfortunately, this

23  creates opportunities for the wide-scale piracy of sound recordings.  Music piracy costs the recording

24  industry over $4.5 billion annually worldwide.

25        19.    Most Internet piracy of sound recordings is accomplished using a technology known

26  as MP3, which stands for Motion Picture Expert Group 1, Audio Layer 3.  MP3s can be quickly

27  copied, transmitted, and downloaded over the Internet.  MP3 is the favored standard for piracy

28  because it is available for free on the Internet and because it does not incorporate any security to limit

1    copying and distribution of the sound recording.  Once a sound recording is converted into the MP3

2    format, it can be copied and distributed an unlimited number of times, without meaningful

3    degradation in the sound quality.

4                                      **<u>Napster</u>**

5         20.     Napster has chosen to build its business on large-scale piracy of phonorecords through

6    the use of MP3 files.  Napster has sought to profit by encouraging and facilitating the distribution and

7    reproduction of millions of infringing MP3 files.  Moreover, plaintiffs are informed and believe that

8    Napster has deliberately refused to maintain any information about its users, making copyright

9    enforcement next to impossible.

10        21.     Napster has encouraged and enabled users to pool their previously private MP3 music

11    files into a single database containing a listing of millions of music files, such that Napster users can

12    easily distribute and make unlawful and unlimited copies of any recordings.  Napster provides its

13    users with the infrastructure, facilities, technological means, and ongoing support and services to

14    accomplish these infringements.  Napster is involved in and enables the process from beginning to

15    end.

16        22.     Napster facilitates this piracy and infringement by maintaining and providing its users

17    with sophisticated tools to search its directory to locate the sound recordings they want.  Users can

18    search for a particular <u>artist</u> or a particular <u>song</u> or <u>album title</u>.  MP3 music files come in varying

19    levels of audio quality, and also can be expected to download at widely varying speeds depending,

20    among other things, on the type of Internet connection maintained by the user posting the sound

21    recording.  Napster provides its users with information about sound quality and connection speed,

22    enables users to tailor their searches to locate only those sound recording files that are of a selected

23    audio quality or only those recordings that can be downloaded at the desired speed, or any

24    combination of the above.

25        23.     Napster does more than simply tell users what songs are available and which users

26    have them.  Napster creates an actual "link" to each responsive music file.  Thus, all Napster users

27    need to do is select the file they want and it automatically downloads to their computer hard drives.

28    A user desiring a song does not have to do anything other than click on the link provided by Napster.

1   Napster facilitates the entire transaction.

2          24.     Specifically, as part of its integrated service, Napster provides to its users (at no cost)

3   Napster's proprietary "MusicShare" software.   This Napster-developed software enables users to

4   connect their computers to a hub of computer servers maintained by Napster, and interacts seamlessly

5   with "server side" software developed and maintained by Napster on its computer servers.   By using

6   Napster's MusicShare software, once connected to Napster's servers, users choose which of their own

7   MP3 music files stored on their computer hard drives they want to make available for copying by

8   other Napster users.   Napster then inventories the music files each user has so designated and it

9   combines and organizes a listing of those song files into an extensive database and directory, which is

10  maintained on Napster's servers and which Napster makes available to all Napster users.   Napster

11  further gathers information to uniquely identify each file and to determine the sound quality of each

12  file.  These designated files become part of what Napster calls its "virtual collection" of music files.

13         25.     Napster's service has been available throughout the United States and the world.

14  Millions of MP3 files have been available for download through Napster.   Napster created its service

15  and promotes it specifically to capitalize on its infringing use.   Napster has touted itself as ***"the***

16  ***world's largest MP3 music library."***   It has boasted that "Napster ensures the availability of ***every***

17  ***song online*** by connecting you live with ***millions of songs*** found in other MP3 listeners' music

18  collections.   With Napster, you'll never come up empty handed when searching for your favorite

19  music again!"  Napster also "virtually guarantees you'll find the music you want, when you want it. . .

20  . you can forget wading through page after page of unknown artists."

21         26.     The overwhelming majority of sound recordings that Napster has made available have

22  been distributed and copied in violation of the copyright law and other laws.   Napster has full

23  knowledge of this fact.

24         27.     Plaintiffs have randomly sampled hundreds of the sound recordings Napster has made

25  available on its service and found that copies of the overwhelming majority, if not complete library,

26  of plaintiffs' Copyrighted Recordings were available on Napster, infringing plaintiffs' rights.

27  Attached hereto as Exhibit B is a true and correct copy of representative screen shots printed off of

28  Napster demonstrating the unauthorized infringement of plaintiffs' Copyrighted Recordings.

1   Additionally, the overwhelming majority, if not complete library, of plaintiff's Licensed Recordings
2   has been made available on Napster, as evidenced by the listings of sound recordings on Napster
3   which include not only the specific title of the Licensed Recording, but also the titles of plaintiffs'
4   compilation albums containing the Licensed Recordings.

5       28.     On or about March 12, 2001, plaintiffs notified Napster in writing of its infringing
6   conduct and of its violation of plaintiffs' rights.  Notwithstanding this notice, Napster continued its
7   unlawful conduct unabated.  On April 6, 2001, plaintiffs sent a second written notice to Napster
8   notifying Napster of its continued infringing conduct and of its violation of plaintiffs' rights.

9                                          **<u>COUNT I</u>**
10                     **CONTRIBUTORY INFRINGEMENT OF COPYRIGHT**

11      29.     Plaintiffs incorporate herein by reference each and every averment contained in
12  paragraphs 1 through 28, inclusive.

13      30.     As described above, an overwhelming amount of copyright infringement has taken
14  place on and by virtue of Napster's service.  These infringements occur whenever a Napster user,
15  without authorization of the copyright owner, downloads an MP3 music file from another user's
16  computer onto his or her own, constituting an unauthorized distribution and resulting in an
17  unauthorized copy.  Each and every one of these infringements is facilitated, encouraged, and made
18  possible by Napster.

19      31.     Through its conduct averred herein, Napster has engaged and continues to engage in
20  the business of knowingly and systematically inducing, causing, and materially contributing to the
21  above-described unauthorized reproductions and/or distributions of copies of the Copyrighted
22  Recordings and thus infringes plaintiffs' copyrights and exclusive rights under copyright in the
23  Copyrighted Recordings.

24      32.     The infringement of each of plaintiffs' rights in and to the Copyrighted Recordings
25  constitutes a separate and distinct act of infringement.

26      33.     The foregoing acts of infringement by Napster have been willful, intentional, and
27  purposeful, in disregard of and indifference to plaintiffs' rights.

28

34.     Napster's conduct, as averred herein, constitutes contributory infringement of plaintiffs' copyrights and plaintiffs' exclusive rights under copyright in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§ 106, 115, and 501.

35.     As a direct and proximate result of the contributory infringements by Napster of plaintiffs' copyrights and exclusive rights under copyright, plaintiffs are entitled to damages and Napster's profits pursuant to 17 U.S.C. § 504(b) for each infringement.

36.     Alternatively, plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Plaintiffs are informed and believe, and on that basis aver, that such statutory damages shall exceed $100,000,000.

37.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

38.     Napster's conduct, as hereinabove averred, is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, plaintiffs are entitled to preliminary and permanent injunctions prohibiting further contributory infringements of plaintiffs' copyrights.

## COUNT II

### VICARIOUS INFRINGEMENT OF COPYRIGHT

39.     Plaintiffs incorporate herein by this reference each and every averment contained in paragraphs 1 through 38, inclusive.

40.     At all times relevant herein, Napster had the right and ability to supervise and/or control the infringing conduct of its users by, without limitation, preventing or terminating a user's access to Napster's computer servers and/or by refusing to index and create links to infringing music files, but has failed to exercise such supervision and/or control.  As a direct and proximate result of such failure, Napster users have infringed plaintiffs' copyrights in the Copyrighted Recordings, as set forth above.

41.     At all times relevant herein, Napster derived substantial financial benefit from infringements of plaintiffs' copyrights by its users in that, among other things, Napster solicits advertising and, plaintiffs are informed and believe, charges fees for advertising on Napster. Plaintiffs are informed and believe, and on that basis aver, that the number and amount of these fees is related directly to the number of Napster users which, in turn, is dependent directly on Napster's facilitation of and participation in the unauthorized reproduction and distribution of plaintiffs' sound recordings. Napster further has undertaken a purposeful strategy to make its company more attractive to potential advertisers and investors by increasing the number of users, and thereby the volume of plaintiffs' sound recordings available for unlawful copying and distribution.

42.     The foregoing acts of infringement by Napster have been willful, intentional, and purposeful, in disregard of and indifference to plaintiffs' rights.

43.     Napster's conduct, as averred herein, constitutes vicarious infringement of plaintiffs' copyrights and exclusive rights under copyright, in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§ 106, 115, and 501.

44.     As a direct and proximate result of Napster's vicarious infringement of plaintiffs' copyrights and exclusive rights under copyright, plaintiffs are entitled to damages and Napster's profits pursuant to 17 U.S.C. § 504(b) for each infringement.

45.     Alternatively, plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).  Plaintiffs are informed and believe, and on that basis aver, that such statutory damages shall exceed $100,000,000.

46.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

47.     Napster's conduct, as hereinabove averred, is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, plaintiffs are entitled to preliminary and permanent injunctions prohibiting further vicarious infringements of plaintiffs' copyrights.

**COUNT III**

**UNLAWFUL USE OF DIGITAL AUDIO INTERFACE DEVICE**

48.     Plaintiffs incorporate herein by this reference each and every averment contained in paragraphs 1 through 47, inclusive.

49.     Napster's software as described above constitutes a "digital audio interface device", pursuant to 17 U.S.C. § 1001(2).

50.     Napster has manufactured and distributed this software to its users, thus violating the prohibition on importation, manufacture, and distribution of plaintiffs' Copyrighted Recordings, pursuant to 17 USC § 1002.

51.     As a direct and proximate result of defendants' violation of 17 USC § 1002, plaintiffs have been injured and are entitled to damages pursuant to 17 U.S.C. § 1009.

52.     Napster's conduct, as hereinabove averred, is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 1009, plaintiffs are entitled to preliminary and permanent injunctions prohibiting further vicarious infringements of Plaintiffs' copyrights.

53.     The foregoing acts by Napster have been willful, intentional, and purposeful, in disregard of and indifference to plaintiffs' rights.  Plaintiffs are therefore entitled to punitive damages.

**COUNT IV**

**VIOLATION OF COMMON LAW UNFAIR COMPETITION**

54.     Plaintiffs incorporate herein by this reference each and every averment contained in paragraphs 1 through 53, inclusive.

55.     Napster's acts, as averred herein, constitute unfair competition.

56.     As a direct and proximate result of Napster's unfair competition, plaintiffs, and each of them, have been damaged, and Napster has been unjustly enriched, in an amount that shall be proven at trial for which damages and/or restitution and disgorgement is appropriate. Such damages and/or restitution and disgorgement should include an order that Napster convey to plaintiffs all gross

1   receipts received or to be received that are attributable to such unfair competition.

2         57.    As a direct and proximate result of Napster's conduct, plaintiffs are further entitled to

3   recover all proceeds and other compensation received or to be received by Napster arising from its

4   conduct.  Plaintiffs request the Court to order Napster to render an accounting to ascertain the amount

5   of such profits and compensation.

6         58.    Through its conduct averred herein, Napster is guilty of oppression, fraud, and/or

7   malice and plaintiffs, in addition to their actual damages are, by reason thereof, entitled to recover

8   exemplary and punitive damages against Napster.

9         59.    Napster's conduct, as hereinabove averred, is causing and, unless enjoined and

10  restrained by this Court, will continue to cause plaintiffs great and irreparable injury that cannot fully

11  be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Plaintiffs are

12  entitled to preliminary and permanent injunctions prohibiting further violation of plaintiffs' rights.

13  <u>**COUNT V**</u>

14  **VIOLATION OF CALIFORNIA STATUTORY UNFAIR COMPETITION**

15        60.    Plaintiffs incorporate herein by this reference each and every averment contained in

16  paragraphs 1 through 59, inclusive.

17        61.    The foregoing acts and conduct of Napster constitute unfair competition under

18  California Business & Professions Code section 17200.

19        62.    As a direct and proximate result of Napster's conduct, as averred herein, plaintiffs are

20  further entitled to recover all proceeds and other compensation received or to be received by Napster

21  arising from its conduct.  Plaintiffs request the Court to order Napster to render an accounting to

22  ascertain the amount of such profits and compensation.

23        63.    As a direct and proximate result of Napster's unfair competition, plaintiffs, and each of

24  them, have been damaged, and Napster has been unjustly enriched, in an amount that shall be proven

25  at trial for which damages and/or restitution and disgorgement is appropriate. Such damages and/or

26  restitution and disgorgement should include an order that Napster convey to plaintiffs all the gross

27  receipts received or to be received that are attributable to such unfair competition.

28

64. Through its conduct averred herein, Napster is guilty of oppression, fraud, and/or malice and plaintiffs are, in addition to their actual damages, by reason thereof, entitled to recover exemplary and punitive damages against Napster.

65. Napster's conduct, as hereinabove averred, is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to California Business & Professions Code section 17203, plaintiffs are entitled to preliminary and permanent injunctions prohibiting further acts of unfair competition.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as follows:

1. On Counts I and II, for defendants' profits and for damages in such amount as may be found; alternatively, for maximum statutory damages in the amount of not less than $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

2. On Count III for actual damages as may be found for violation of 17 U.S.C. § 1002; and for appropriate statutory damages for such violation.

3. On Counts I, II and III, for a preliminary and a permanent injunction enjoining defendants, and each of them, and their respective agents, servants, employees, officers, attorneys, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from: (i) directly or indirectly infringing in any manner any of plaintiffs' respective copyrights (whether now in existence or hereafter created), including without limitation, the Copyrighted Recordings; and (ii) from causing, contributing to, enabling, facilitating, or participating in the infringement of any of plaintiffs' respective copyrights, including without limitation, the Copyrighted Recordings.

4. On Counts IV and V, for an accounting, restitution of defendants' unlawful proceeds, and damages according to proof.

5. On Counts I, II, III, IV and V, for punitive and exemplary damages in such amount as may be awarded at trial.

///

6.   For prejudgment interest according to law.

7.   For plaintiffs' attorneys' fees, costs, and disbursements in this action.

8.   For such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

Date:   August 9, 2001                     HARVEY SISKIND JACOBS LLP
                                           LAWRENCE J. SISKIND
                                           IAN K. BOYD


                               By   /s/ Ian K. Boyd
                                    Ian K. Boyd
                                    Attorneys for Plaintiffs
                                    Razor & Tie Entertainment, L.L.C. and
                                    Razor & Tie Direct, L.L.C.